# CIVIL COVER SHEET

JS-44 (Rev. 7/13 DC)

## I. (a) PLAINTIFFS

Michael Markowicz
9028 Lee Highway
Fairfax, VA 22031

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Fairfax**
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

JEH CHARLES JOHNSON, Secretary, Department of Homeland Security, U. S. Department of Homeland Security Washington, DC 20528

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

### (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mahon & Berger, Esq.
70 Glen Street, Suite 280
Glen Cove, NY 11542
516-671-2688

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○1 | ○1 | Incorporated or Principal Place of Business in This State | ○4 | ○4 |
| Citizen of Another State | ○2 | ○2 | Incorporated and Principal Place of Business in Another State | ○5 | ○5 |
| Citizen or Subject of a Foreign Country | ○3 | ○3 | Foreign Nation | ○6 | ○6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organization

☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

|  |  |  |  |
|---|---|---|---|
| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ⊙ H. *Employment Discrimination*<br><br>☒ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/Privacy Act*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi-district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Discrimination based on age.

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | DEMAND $ <br> JURY DEMAND: | Check YES only if demanded in complaint <br> YES ☒    NO ☐ |
|---|---|---|---|
| VIII. RELATED CASE(S) IF ANY | (See instruction) | YES ☐    NO ☒ | If yes, please complete related case form |

DATE: 8-13-2015     SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

    I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

    III.      CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    IV.      CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

    VI.      CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

    VIII.      RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL MARKOWICZ,<br>9028 Lee Hwy<br>Fairfax, VA 22031<br>    Plaintiff,<br><br>JEH CHARLES JOHNSON,<br>Secretary, United States Department<br>of Homeland Security<br>U.S. Department of Homeland Security<br>Washington, DC 20528<br><br> Serve on:<br><br>  United States Attorney's Office<br>  555 4th Street, NW<br>  Washington, DC 20530<br><br> -and-<br><br>  Office of the Attorney General<br>  U.S. Department of Justice<br>  950 Pennsylvania Ave, NW<br>  Washington, DC 20530<br><br>    Defendant. | Civil Action No. 15-1311<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, Michael Markowicz, by and through his undersigned counsel, files this Complaint against Defendant, Jeh Charles Johnson, in his official capacity as Secretary of the Department of Homeland Security, for violations of the federal anti-discrimination laws committed by the United States Secret Service against Plaintiff and in support thereof, alleges as follows:

**PARTIES**

1

1. Plaintiff, Michael Markowicz, is a resident of Virginia, and is currently employed as a Special Agent (SA) GS-1811-13 with the United States Secret Service ("Secret Service").

2. SA Markowicz has had a long and distinguished career in law enforcement and service to his country. SA Markowicz has been assigned to the Secret Service's Washington Field Office since January 2010.

3. Defendant Jeh Charles Johnson is sued in his official capacity as Secretary of the United States Department of Homeland Security because the United States Secret Service is a bureau within the Department of Homeland Security.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 because this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. and the Age Discrimination in Employment Act, 29 U.S.C. Section 633a.

5. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(e) because a substantial portion of the events giving rise to the claim took place within the District of Columbia, where the Plaintiff worked at the time of the events described herein and where the headquarters of Defendant are located.

## THE SECRET SERVICE'S MERIT PROMOTION PROCESS FOR GS-14 POSITIONS

6. Under the Secret Service's Merit Promotion Plan (MPP) for GS-1811 Positions, Special Agents (SAs) compete for promotion to positions at the GS-14 level.

7. SAs who choose to participate in the promotion process receive a Merit Promotion Process (" MPP score.")

8. Candidates use their MPP score to bid (or apply) for announced vacancies.

9. The Personnel Division refers three groups of eligible candidates to the Advisory Board from which selection can be made: the SA Promotion Certificate, the SA Reassignment Certificate, and the Promotion Register.

10. The SA Promotion Certificate purportedly lists the best qualified candidates for promotion. The best qualified candidates for promotion who make the "cut off" score are the top 31 GS-13 candidates and lateral GS-14's who bid on a particular vacancy.

11. The SA Reassignment Certificate lists all candidates who bid on the vacancy who are at or above the grade level of the announced position.

12. Each candidate is "ranked" according to the candidates score, as previously accumulated from combined scores of the MPP.

3

13. Once the bidding is completed, the Personnel Division will create a list of eligibles for each vacancy.

14. The Advisory Board ("the Board") consists of the Deputy Director, the Assistant Directors (AD), the Chief of the Uniformed Division, and Chief Counsel, with the Chief of the Personnel Division serving as advisor and recorded of board proceedings.

15. Special Agents in Charge of the Divisions/Branches make their preferences "known" through discussions with Deputy Assistant Directors ("DAD") or Assistant Directors ("AD").

16. The Board provides the Deputy Director and Director recommendations for selection from the referred list of eligibles.

17. The Deputy Director, as head of the Board either approves or disapproves the recommendations.

18. The Director either "signs" or does not "sign" the Promotion List.

19. On October 7, 2010, the Personnel Division issued a Job Opportunities message announcing the positions open for bid by SAs participating in the MPP process, including vacancy 10101, Assistant to the Special Agent in Charge (ATSAIC), GS-14, Office of Strategic I Intelligence and Information, Protective Intelligence and Assessment Division (PIAD).

4

20. Plaintiff bid on vacancy 10101, ATSAIC, PIAD.

21. On December 10, 2010, the selections for the ATSAIC PIAD position were announced.

22. Plaintiff was not selected for the ATSAIC, PIAD position.

23. AD Richard Elias recommended SA Thomas Edwards, SA Jonathan Wynn, and SA Gregory Naranjo for promotion to the GS-14 positions of ATSAIC, PIAD, vacancy 10101.

24. Deputy Assistant Director (DAD) Craig Magaw presented AD Elias's recommendations for selection to the Advisory Board.

25. The Advisory Board concurred with AD Elias's recommendations and SA Edwards, SA Wynn, and SA Narango were selected for promotion to the ATSAIC, PIAD.

26. AD Elias rationalized his selection recommendation as follows:

> "In determining who to recommend for the ATSAIC PIAD position, AD Elias considered a number of different geographical locations and operational divisions/entitles with the Agency; the candidate's recent exposure to the protective responsibilities of the Secret Service; prior experience in PIAD; the candidate's performance in his/her previous assignments; length of time in

5

his/her current position; candidate's supervisory experience; the candidate's unique skills; the candidate's career track; the candidate's Merit Promotion Process (MPP) score; and effect of the promotion on the morale of the division."

27. Attached is an actual comparison of the candidates and their Secret Service career records at the time of promotion selections.

28. If the Agency had used non-discriminatory criteria/reasons for its selection decisions, the Plaintiff should have been the obvious promotion selection, based on the **statement of facts** concerning combined experience, diversity of assignments, career track, and MPP rank/score as reported above, courtesy of the Secret Service Career Tracking System, as provided by the Office of Personnel.

29. As shown above, the Plaintiff had more combined protection experience (8 years, 10 months) than the other listed candidates. Defendant fails to recognize more supporting **facts** of Plaintiff's career work. Although Plaintiff was never previously assigned to PIAD as a direct transferred assignment, he did have "protective intelligence" training and experience.

6

30. A pattern of a discriminatory promotion selections was established with all three (3) promotion lists of calendar year 2010. At this time and question of **facts**, it should be noted that all three (3) selections for the listed vacancy were minorities, as Thomas Edwards was previously identified as White. Secret Service personnel records revealed that he lists his race as Hispanic. Therefore, this gives greater credence to the fact that Edwards was selected because of his race, Hispanic, and not because of his higher ranking, as he also did not have PPD and/or PIAD experience, only VPD, like Plaintiff.

31. Plaintiff has shown pretext with the submission of Assistant Director Luzcko's statement: ***"Mike, this is 'off-the-record', but if there is a Black or a Hispanic on that qualified list, then we (the promotion Advisory Board) have to promote them ahead of you."*** The Agency fails to recognize the **fact** that AD Luzcko does not deny in a signed sworn statement making this statement to the Plaintiff, only that "**I do not recall** making the 'off the record' statement."

32. AD Ellias, AD Luczko, DAD Magaw, and SAIC Garabito cannot or **"do not recall"** definitively, whether or not they have had discussions or conversations about an important factor such as **"race"** as it relates to promotions, when they are asked less than a year from the time of these meetings.

7

## COUNT I - DISCRIMINATION BASED ON RACE/COLOR

33. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-33 above as if set forth fully herein.

34. Plaintiff applied and was highly qualified for the GS-14 position, but he was not selected because of his race and/or color in violation of Title VII of the Civil Rights Act of 1964.

35. As a result of Defendant's discriminatory conduct, Plaintiff has been suffered economic and noneconomic damages, including but not limited to lost wages, diminished promotional opportunities and emotional pain and suffering.

36. Plaintiff has exhausted his administrative remedies.

## COUNT II – RETALIATION FOR PROTECTED ACTIVITY

37. On or about December 15, 2011, Assistant to Special Agent in Charge ("ATSAIC") Michael Mullen of the Washington Field Office ("WFO") Electronic Crimes Task Force ("ECTF") Squad sent an email to all Special Agents of the WFO titled; "ECTF Interest". It was a recruiting email soliciting candidates for the ECTF Squad for which some aspects required prior certification, such as Network Intrusion Responder Certification ("NITRO"), for those interested in the Critical Systems Protection ("CSP") program.

He stated that : "Your responses should include our United States Secret Service ("USSS") Special Agent (" SA") Entered On Duty (" EOD") date, WFO EOD date, current career phase, educational and previous

8

professional experience. Please also include any previous USSS Electronic Crimes Special Agent Program ("ECSAP") training and/or assignments. Once the responses are received, we will review them and schedule brief meetings with the candidates in order make the final selections. All responses should be discussed with your ATSAIC's prior to submission."

38. Plaintiff then discussed this option with his ATSAIC, Lora Jones, and she approved of Plaintiff submitting an email that included a resume to ATSAIC Mullen for a position consideration in the ECTF.

39. At that time, Plaintiff had the following technical resume:

3 years assigned to the USSS Information Assurance Branch of the Information Resources Management Division at USSS Headquarters. In this capacity, Plaintiff worked on various research and development projects to include the nationwide encrypted portable memory drive and wireless earpiece projects.

Plaintiff also served on the following Committees as the USSS technical representative in those 3 years:

DHS Law Enforcement Information Sharing Committee

DHS PIV Card Committee

Plaintiff also had the following training completed:

Cyber-Age Gangs and Intelligence Training - 2011

Social Networks and the Internet in Criminal Investigations - 2011

NITRO- 2007

SANS Institute- IT Security Essentials for Managers - 2007

SANS Institute- Intro to IT Security – 2007

40. Plaintiff then forwarded this email/resume to ATSAIC Mullen in the time allotted and subsequently followed up with him in person within a week or so later to make sure he received it, and he said he did.

41. On approximately, January 6, 2012, Plaintiff met with Gary Durham (ASAIC over all WFO Criminal Squads) in his office. Plaintiff told him that Plaintiff would willingly give up his Group Leader (" GL") in the Asset Forfeiture Money Laundering ("AFML") Squad to transfer down to the ECTF squad for any non-GL spot. Plaintiff had also worked for ASAIC Durham in Headquarters in the Information Resources Management Division, so he was familiar with Plaintiff's technical background. He agreed that Plaintiff would be a good fit in that squad and further commented that: "I could use good senior agent leadership down there for the young guys."

42. Plaintiff then had many subsequent conversations over the next weeks and months with SA Alex Vlahos, who was a GL in the ECTF. He stated that the ECTF had, as a squad, looked at the list of potential candidates for the ECTF and they, the non-supervisory agents had listed Plaintiff as the #1 choice Phase III (Post – Full Time Protective Detail), and another Phase I (Pre-Full Time Protective Detail) agent as their top choices to come to the ECTF. Plaintiff had also told SA Vlahos of his conversation with ASAIC Durham and that ASAIC Durham had expressed his position to have him placed in the ECTF, which would make logically sense, since he is the ASAIC over the Criminal Squads, which the ECTF falls under.

43. On June 8, 2012, Administrative ASAIC Mark Hughes notified all WFO agents via email of the manpower reassignments and effective dates. It was then that Plaintiff learned that he was not selected

10

for the ECTF squad. Furthermore, the Phase III agent that was selected had no technical background whatsoever and had only been assigned to WFO for just about a year, whereas Plaintiff had a technical resume and had been in the WFO for over 2 and half years. Within that same amount of time, Plaintiff had been requesting through the proper channels, to attend the Critical Systems Protection (CSP) certification training, based on his technical background. He was never given that opportunity. However, an agent with less than 6 months time at the WFO, was selected to attend the CSP certification training school.

44. It should also be noted that Plaintiff also had EOD seniority in both cases over both agents in these cases, the ECTF selection and the CSP training selection.
Plaintiff claims that WFO SAIC David Beach purposely and intentionally denied his inter-office transfer and training request because he filed an EEO case against the Secret Service, especially in the matter of the agent promotion process of which he has kindly benefitted from.

45. It should be noted that in January, 2015, Plaintiff finally transferred to the WFO ECTF, exactly three (3) years after his initial, qualified request. Many very less qualified agents have gone before Plaintiff to include some even just out of the Training academy, on their 1st day on the job with the Secret Service. Plaintiff started with the WFO ECTF, on his 19th year on the job.

46. On May 8, 2013, Plaintiff informed his entire Secret Service chain-of-command and other pertinent command staff that he had been contacted, via telephonic voicemail, by media author Ron Kessler. The chain-of-command included the following personnel:

ATSAIC Scott Cochran

ASAIC Gary Durham

DSAIC Kathy Michalko

11

SAIC David Beach

SAIC Mark Copanzzi

SAIC Ed Donovan

DAD Jonathan Bartlett

AD Paul Morrissey

47. Plaintiff informed them that he no contact with Kessler in any form, written or spoken, in either the past, present, or would Plaintiff in the future. Plaintiff told them that someone must have informed Kessler with explicit knowledge of the incident involving missing Secret Service data tapes, while Plaintiff worked at the Information Resources Management Division, as Plaintiff was one of the agents that went looking for the data tapes.

48. Plaintiff informed them by email that Plaintiff had absolutely no contact with Kessler and that Plaintiff was self reporting, as he called his Secret Service work cell phone. Plaintiff then advised this group that if they were unaware, Plaintiff was currently involved in an EEO case against the Secret Service and that Plaintiff has revealed everything he knew about this matter in full disclosure and thus he considered the matter closed. Therefore, any adverse effect on Plaintiff's career as a result of the matter, Plaintiff would perceive, based on his EEO complaint, as a form a retaliation for having filed such a complaint.

Plaintiff received no responses from any of the above recipients.

49.     However, on August 2, 2013, Plaintiff was informed by ASAIC Durham telephonically that he was being summoned to the DHS-OIG's Office for an interview on August 5th, and it was unknown for what reason.

50.     On August 5, 2013, Plaintiff was interviewed and confronted by the DHS-OIG concerning his email of May 8, 2013, which was forwarded to them by Secret Service Inspector Russell Wilson, as it has his name at the top of their copy.

51.     Plaintiff had nothing more to say to the Inspectors than what was already in their copy of the email, as previously stated to Secret Service hierarchy. Thus, Plaintiff believed the listed Secret Service hierarchy, such as Paul Morrissey and Mark Copanzzi retaliated against him for having participated in an employment discrimination proceeding, as was pointed out to them in Plaintiff's email to them, despite his actual intentions of the proper self-reporting of Media trying to contact Secret Service personnel via unconventional channels.

WHEREFORE, Plaintiff prays for judgment against Defendant that provides the following relief:

    a.     An order for Defendant to place Plaintiff in the position he would have held but for Defendant's discriminatory treatment;

    b.     Compensatory damages;

    c.     Punitive damages;

    d.     Reasonable attorneys' fees and costs;

    e.     Interest as allowed by law; and

    f.     for such other and further relief as the Court deems necessary and proper.

**JURY DEMAND**

Plaintiff prays for a trial by jury with respect to all issues as triable.

Respectfully submitted,

/s/ Lawrence Berger
Lawrence Berger, Esq.
Mahon & Berger, Esqs.
70 Glen Street, Suite 280
Glen Cove, New York 11542
516 671 2688
Fax: 516 671 1148
*fleoaatty@aol.com*

Dated: July 23, 2015